# In the United States Court of Federal Claims

**FOR PUBLICATION**

No. 22-1689C
(Filed: April 25, 2024)

|  |  |
|---|---|
| **WESLEY H. OSBURN**, | ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| **UNITED STATES**, | ) ) |
| *Defendant.* | ) ) ) |

*Wojciech Z. Kornacki*, Pentagon Law Office, Washington, DC, for plaintiff.

*Anthony F. Schiavetti*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Patricia M. McCarthy*, Director, and *Eric P. Bruskin*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC. *Peyton Nedley*, Lieutenant, Office of Claims and Litigation, United States Coast Guard, Washington, DC, Of Counsel.

**OPINION AND ORDER**[1]

**BONILLA, *Judge*.**

Wesley H. Osburn served almost three years in the United States Coast Guard, rising to the rank of Petty Officer Third Class (E-4), until he was administratively separated for serious misconduct on August 15, 2017. After successfully challenging his characterization of service before the Coast Guard Board of Review of Discharge

---

[1] This case was assigned to the undersigned for adjudication on November 17, 2022, pursuant to Rule 40.1(a) of the Rules of the United States Court of Federal Claims (RCFC). At the parties' request, on April 24, 2023, the matter was remanded to the Board for Correction of Military Records of the Coast Guard (BCMR) for further consideration. The BCMR issued its remand decision on October 11, 2023. Briefing on the dispositive cross-motions resolved herein continued through April 19, 2024. Oral argument was deemed unnecessary.

and Dismissals (Discharge Review Board), Mr. Osburn filed this suit, asking the Court to set aside his discharge and direct his reinstatement, correct his military records, and order back pay and allowances for the intervening years. Following a voluntary remand to the BCMR, Mr. Osburn amended his complaint to challenge the Board's denial of relief. For the reasons set forth below, Mr. Osburn's motion for judgment on the administrative record (ECF 20) is DENIED and defendant's cross-motion for judgment on the administrative record (ECF 23) is GRANTED.

## BACKGROUND

Mr. Osburn enlisted in the Coast Guard as a Seaman Recruit (E-1) on August 26, 2014, and began his active duty military service on December 2, 2014. After completing recruit basic training and "Culinary Specialist A School," Mr. Osburn promoted to Seaman Apprentice (E-2) and eventually rose to the rank of Petty Officer Third Class (E-4), serving as a Food Service Specialist (FS3).[2] Prior to the events leading to his administrative separation, Mr. Osburn was eligible for reenlistment and intended to continue serving in the Coast Guard. During his nearly three years of service, Mr. Osburn was awarded a Rifle Marksman Ribbon, a Pistol Marksman Ribbon, a Meritorious Team Commendation, and a National Defense Service Medal. His Enlisted Employee Reviews generally recorded above average, excellent, and superior ratings for the performance of his assigned duties.

On February 29, 2016, Mr. Osburn's former Coast Guard barracks mate reported to his chain of command a July 2015 incident where Mr. Osburn gave an underage civilian alcohol and may have sexually assaulted her.[3] The allegations triggered a criminal investigation by the Coast Guard Investigatory Service (CGIS), prompting interviews of the alleged victim, Coast Guardsmen who may have witnessed or had knowledge of the events, and Mr. Osburn. On August 16, 2016, Lieutenant Junior Grade (O-2) Rachel G. Christensen preferred charges against Mr. Osburn, including: five specifications of making false official statements to military investigators in violation of Article 107 of the Uniform Code of Military Justice (UCMJ); two specifications of sexual assault in violation of Article 120 of the UCMJ; and one specification of conduct prejudicial to good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces in violation of

---

[2] Since Mr. Osburn's enlistment, the Coast Guard replaced the job code "Food Specialist" (FS) with "Culinary Specialist" (CS). As Mr. Osburn held the FS title during his service, the Court will use FS notwithstanding the administrative record's later references to CS.

[3] The barracks mate reported the incident after attending Sexual Assault Prevention, Response, and Recovery (SAPRR) Program training. The record suggests, but is not clear, whether a second Coast Guardsman also reported the incident after attending the same training. *Compare, e.g.*, AR 5 (CGIS investigation initiated based upon the report of Mr. Osburn's former barracks mate) *with* AR 130 (CGIS investigation initiated based upon reports of two Coast Guardsmen) *and* AR 157 (similar).

Article 134 of the UCMJ.[4]  Following the assignment of defense counsel and the appointment of Lieutenant Commander (O-4) M. N. Jones as the Preliminary Hearing Officer, an Article 32 hearing under the UCMJ convened on October 4, 2016.[5]

On October 13, 2016, the Preliminary Hearing Officer submitted a written report to the Convening Authority.  In the report, Lieutenant Commander Jones recommended dismissal of Charge I (False Official Statement) and Charge II (Sexual Assault) and, in lieu of a criminal charge, non-judicial punishment under Article 15 of the UCMJ (a/k/a "Captain's Mast") for Charge III (General Article).  The Preliminary Hearing Officer found that one sex act was consensual while the other sex act was initially performed with the "mistaken" belief of consent albeit "ill advised."  AR at 255–56.  Based upon these findings, the Preliminary Hearing Officer assessed the charged false official statements through the lens of a literal truth defense and recommended that the final charge of serving alcohol to a minor, although supported by sufficient evidence, merited non-judicial punishment.  Notwithstanding the Preliminary Hearing Officer's report, on November 23, 2016, the Convening Authority, Rear Admiral (O-8) June E. Ryan (Commander, Ninth Coast Guard District), referred the charges to a General Court-Martial.[6]

Prior to trial, counsel engaged in negotiations where Mr. Osburn would agree to plead guilty at a Summary Court-Martial to serving alcohol to the alleged (underage) victim in violation of Article 134 of the UCMJ and making at least one false official statement to CGIS in violation of Article 107 of the UCMJ.[7]  In return, the sexual assault charge would be dismissed.  Mr. Osburn would further agree to waive his right to challenge administrative separation so long as he received an "Honorable" characterization of service, albeit accompanied by an "RE-4" reenlistment code.[8]  Before a pretrial agreement was finalized, however, the alleged

---

[4] The five false official statements related to Mr. Osburn's reported comment that he intended to have sex with the alleged victim, his purchase of alcohol and providing it to the (underage) alleged victim, his picking up and carrying the alleged victim to his bedroom, and his showering with the alleged victim.  Mr. Osburn was also charged with two specifications of sexual assault (i.e., penile and digital).  Lastly, Mr. Osburn was charged with violating state law under Article 134 of the UCMJ for providing alcohol to the nineteen-year-old alleged victim.

[5] Similar to a preliminary hearing in civilian jurisdictions, UCMJ Section VII ("Trial Procedure"), Article 32 (10 U.S.C. § 832) mandates the hearing.  The Preliminary Hearing Officer generally reviews all non-testimonial evidence before proceeding to the examination of witnesses and thereafter makes disposition recommendations to the Convening Authority.

[6] Although substantively unchanged, the charging language included in three specifications was modified slightly to reflect comments made by the Preliminary Hearing Officer.

[7] The record does not specify which alleged false official statement(s) were part of the plea negotiations.

[8] According to Commandant Instruction (COMDTINST) M1000.4,

> Each member discharged from the Service is assigned one of the following reenlistment codes, as appropriate . . .

victim declined to testify at trial, and Mr. Osburn presumably walked away from pretrial negotiations. Without this critical witness, on April 5, 2017, the Convening Authority withdrew and dismissed the charges without prejudice. In lieu of court-martial, and consistent with the Preliminary Hearing Officer's recommendation, a Captain's Mast was reportedly convened and "FS3 Osburn was found guilty of violating Article 107 (False Official Statement) and Article 134 (Conduct of a Nature to Bring Discredit upon the Armed Forces) of the UCMJ."[9] AR 130.

Concomitantly, in a Notification of Intent to Discharge dated April 14, 2017, Mr. Osburn's Sector Commander, Captain (O-6) Scott B. Lemasters, initiated administrative separation for serious misconduct (i.e., sexual assault, false official statement, conduct prejudicial to the good order and discipline in the armed forces or of a nature to bring discredit upon the armed forces). The notice further informed Mr. Osburn of his administrative rights as well as the potential consequences of a General discharge and, relevant here, stated: "You are eligible for retention under the Commandant's Second Chance Program."[10] AR 53. Acknowledging receipt of the notice of administrative separation, Mr. Osburn "object[ed] . . . to being discharged" and "request[ed] . . . to be considered under the Commandant's Second Chance Program." AR 55. Through civilian counsel, Mr. Osburn challenged the sufficiency of the evidence, principally relying upon the Preliminary Hearing Officer's report and the recommendations therein. He further cited the unfairness of being denied the opportunity to clear his name after the alleged victim declined to testify. Mr. Osburn also submitted a rebuttal statement to his command, where he denied the alleged misconduct, summarized his military service, and expressed his desire to continue serving in the Coast Guard.

Rejecting Mr. Osburn's challenges, on May 15, 2017, the Sector Commander recommended "separat[ion] from the Coast Guard with a General discharge by reason of misconduct for commission of a serious offense." AR 51. The recommendation reiterated the grounds set forth in the Notification of Intent to Discharge, adding facts disputed by Mr. Osburn:

---

(1) RE-1 Eligible for reenlistment.

(2) RE-2 Ineligible for reenlistment due to retirement.

(3) RE-3 Eligible for reenlistment except for a disqualifying factor.

(4) RE-4 Not eligible for reenlistment.

COMDTINST M1000.4 ¶ 1.B.2.g (Apr. 2017) (ECF 23-1 at 103).

[9] Aside from this reference in the September 27, 2018 record of proceedings before the Discharge Review Board, the administrative record does not document the convening of the Captain's Mast or the punishment imposed.

[10] As discussed in Section IV, *infra*, the Coast Guard Commandant's Second Chance Program allows first-term service members "with potential" the opportunity to bypass administrative separation for "a youthful mistake." COMDTINST M1000.4 ¶ 1.B.39.a (ECF 23-1 at 181).

4

> The alleged victim reported [F]S3 Osburn coerced her into having sexual intercourse and digitally penetrated her anus despite her repeatedly stating this activity was not wanted. . . . Despite the lack of a judicial conviction, the investigation established sufficient evidence to demonstrate [F]S3 Osburn violated Article 107 and Article 134 of the UCMJ and of which the violation of Article 107 carries a maximum punishment of a punitive discharge.

AR 51. The Sector Commander summarily rejected Mr. Osburn's request for retention under the Commandant's Second Change Program, conclusively stating: Mr. Osburn "is not recommended for retention in the Coast Guard." *Id.*

On June 12, 2017, the District Commander–i.e., the Convening Authority who referred and later dismissed the charges–concurred and strongly recommended approval of the administrative separation for serious misconduct. He further recommended Mr. Osburn's service be characterized as "General Under Honorable Conditions" and summarized the "significant evidence" demonstrating Mr. Osburn's misconduct. AR 49. Relevant here, the endorsement included: "[F]S3 Osburn's act of picking up the victim and carrying her to his bedroom without her consent was an assault consummated by a battery in violation of Article 128 of the UCMJ." *Id.* This marked the first time the Coast Guard referenced Article 128 during Mr. Osburn's administrative separation.

The Coast Guard Personnel Service Center–acting through the Enlisted Personnel Management Division (CG PSC-EPM), Advancements and Separation Branch–approved the administrative separation on July 11, 2017. More specifically, Mr. Osburn was ordered to be administratively separated for misconduct (i.e., commission of a serious military or civilian offense) effective August 15, 2017, with a "[General] Under Honorable Conditions" characterization of service and assigned an "RE-4" reenlistment code. AR 203. In approving the separation, a CG PSC-EPM panel member noted that the June 12, 2017 "flag endorsement" authored by the Ninth Coast Guard District Commander "gets me to where I need to be to concur with separation with a [G]eneral [discharge] for sexual assault." AR 204. Consistent with the foregoing, on August 15, 2017, Mr. Osburn was administratively separated from the Coast Guard for serious misconduct with an RE-4 reenlistment code, and his service was characterized as General Under Honorable Conditions.

Thereafter, on January 30, 2018, Mr. Osburn filed an Application for Correction of Military Records under 10 U.S.C. § 1552, seeking to upgrade the characterization of his service from "General Under Honorable Conditions" to "Honorable." Through civilian counsel, Mr. Osburn continued to press his sufficiency of the evidence argument, noting that the Preliminary Hearing Officer found that the "vast majority" of the charges preferred fell short of the preponderant evidence standard or lacked probable cause altogether. AR 135. Mr. Osburn similarly

reiterated the inherent unfairness of his inability to clear his name at trial after the alleged victim declined to testify. Finally, Mr. Osburn complained that the pretrial agreement under consideration offered a more favorable outcome than his subsequent administrative separation.

In response to Mr. Osburn's application, a Discharge Review Board convened under 10 U.S.C. § 1553 on September 27, 2018. In a split decision (4-to-1) formally approved by the Commandant on May 20, 2020, the Discharge Review Board recommended Mr. Osburn's discharge be changed to "Honorable" bearing the following narrative: "Separation for Miscellaneous / General Reasons." AR 129. The Discharge Review Board also upgraded Mr. Osburn's separation code from "misconduct, commission of a serious offense" (JKQ) to "involuntary separation" (JND) as well as his reenlistment code from RE-4 to RE-3. This decision was based on the Discharge Review Board's principal finding that the sex acts charged as violations of Article 120 of the UCMJ appeared to be consensual. The majority also cited Mr. Osburn's job performance and interest in continued service. At bottom, the Discharge Review Board concluded that Mr. Osburn's discharge, although "proper[,] . . . was not equitable."[11] AR 132. Mr. Osburn's Certificate of Release of Discharge from Active Duty (DD Form 214) was accordingly amended to reflect an Honorable characterization of service and a discharge for miscellaneous/general reasons, with a separation code of JND and a reenlistment code of RE-3.

Mr. Osburn filed suit in this Court on November 16, 2022, challenging the procedures followed and evidentiary basis for his involuntary separation. Mr. Osburn further alleges his command failed to properly consider him for retention under the Commandant's Second Chance Program. As noted *supra*, Mr. Osburn seeks to set aside his discharge and be reinstated, correct his military records accordingly, and recoup back pay and allowances for the intervening years of constructive service. Following a voluntary remand, the BCMR denied further relief and instead found:

- Mr. Osburn's chain of command did not err in rejecting the advisory findings and recommendations of the Preliminary Hearing Officer or by pursuing his administrative separation based upon the dismissed charges.

- The District Commander's factual findings surrounding the disputed issue of consent were supported by the record.

- Mr. Osburn was not discharged for the alleged commission of sexual assault, but rather, his making at least one false official statement to CGIS, which is supported by the record and independently punishable by a punitive discharge.

---

[11] The dissenting board member focused on Mr. Osburn's false official statements, explaining such conduct "represents a serious breach in the Coast Guard's core values," justifying the discharge Under Other Than Honorable conditions and "mak[ing] him ineligible for further military service." AR 132.

6

- The District Commander did not err in opining that Mr. Osburn's reported actions constituted an assault consummated by a battery, and referencing Article 128 of the UCMJ, as the factual basis for that assertion was included in the Notification of Intent to Discharge dated April 14, 2017.

- The nature and extent of the consideration given to a service member's performance record is discretionary and, under applicable Coast Guard policies, "a single 'serious offense'" merits discharge regardless of the quality of service.

- The Second Chance Program was inappropriate, considering Mr. Osburn's age and his alleged misconduct in July 2015, exacerbated by his false statements to CGIS investigators in March 2016.

AR 20–23. Mr. Osburn filed an amended complaint on January 5, 2024, reiterating the claims included in his original complaint and further alleging that the BCMR's remand decision is arbitrary and capricious.

## DISCUSSION

Mr. Osburn makes three principal arguments in his amended complaint, challenging: (1) the BCMR's decision denying additional relief; (2) the bases for his separation and characterization of service; and (3) the Coast Guard's refusal to retain him under the Commandant's Second Chance program. The Court will address each issue in turn.

### I.   Legal Standard

Decisions issued by military corrections boards are reviewed under an arbitrary, capricious, unsupported by substantial evidence, or contrary to law standard. *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998). Moreover, where, as here, a civilian judge is called upon to evaluate the propriety of a service member's administrative involuntary discharge, military judgment is entitled to great deference. *Doe v. United States*, 132 F.3d 1430, 1434 (Fed. Cir. 1997) ("When a branch of the armed forces has made a decision concerning who is or who is not fit to serve, that decision is generally entitled to great deference.") (citing *Orloff v. Willoughby*, 345 U.S. 83, 90 (1953); *Maier v. Orr*, 754 F.2d 973, 984 (Fed. Cir. 1985)). The United States Supreme Court's adage "judges are not given the task of running the Army," *see Orloff*, 345 U.S. at 93, applies with equal force to the Coast Guard. In other words, this Court's role is limited to confirming that duly authorized military officials adhered to applicable law and correctly implemented appropriate regulations and instructions in reaching otherwise unreviewable personnel decisions.

## II.  BCMR Decision

Central to Mr. Osburn's amended complaint is his allegation that the BCMR's decision to deny him relief was arbitrary and capricious.  He specifically charges the Board "fails to adequately address [p]laintiff's arguments and evidence[,] . . . ignores the entirety of the evidence[,] and [ ] fails to explain why the thorough and detailed findings and recommendations of the [P]reliminary [H]earing [O]fficer and the decision of the Discharge Review Board are ignored."  ECF 19 at 19–20.  Mr. Osburn further challenges the Board's observation that the record includes facts supporting "contradictory conclusions" about the July 2015 incident and his veracity during the subsequent CGIS investigation.  *See* ECF 20 at 23 (quoting AR 21); ECF 24 at 28.

As detailed above, the BCMR reviewed Mr. Osburn's petition and ultimately denied relief.  In reaching its conclusion, the Board reviewed an extensive record, including: the CGIS investigative report, with accompanying affidavits and witness interview summaries; the charges preferred and referred to trial; the Article 32 proceeding materials, including the Preliminary Hearing Officer's report; the Convening Authority's withdrawal and dismissal of the charges without prejudice; the Notification of Intent to Discharge and Mr. Osburn's rebuttal; the District and Sector Commanders' administrative separation recommendations; Mr. Osburn's separation notice; and the decision of the Discharge Review Board to grant partial relief.  After summarizing the relevant law and military protocol, the BCMR made ten findings and conclusions based on the record presented and the arguments advanced in Mr. Osburn's petition.  Mr. Osburn's current challenge focuses primarily on the BCMR's third and fourth findings: the propriety of the Convening Authority's referral of the charges to a General Court-Martial despite the Preliminary Hearing Officer's contrary recommendations; and the BCMR's observation that the record supported "contradictory conclusions."

In support of these arguments, and in pushing his overall challenge to the BCMR's remand decision and findings, Mr. Osburn summarily contends that the Board "selected only certain portions of the evidence" to reach its findings and conclusions and "did not analyze all the relevant data."  ECF 20 at 23.  In his opening brief, however, Mr. Osburn fails to specify *what* evidence the BCMR purportedly disregarded or how it may have impacted the Board's assessment.  Only in his reply brief does he finally challenge the Board's reliance on CGIS "non-verbatim and summarized notes" of witness interviews–as opposed to actual witness interviews– and further asserts: "The BCMR never explained how the flirting, kissing, braless back rub, sleeping in the same bed after the intercourse, plans on having a relationship, and statements to [the alleged victim's friend] fit into its analysis of '*contradictory conclusions*.'"  ECF 24 at 27 (emphasis in original).  Consequently, this argument is waived.  *See Seventh Dimension, LLC v. United States*, 161 Fed. Cl. 110, 129 (2022) ("Undeveloped or perfunctory arguments, such as those raised in a factual background section or in the footnotes of a party's brief, may be deemed forfeited or

8

waived.") (citing *SmartGene, Inc. v. Advanced Biological Lab'ys, SA*, 555 F. App'x 950, 954 (Fed. Cir. 2014)).

Even assuming *arguendo* these arguments were timely raised and perfected, they nevertheless fail. Putting aside the fact that the BCMR considered the alleged victim's affidavit, and thoroughly summarized the record presented, the Board is not required to detail its assessment of every piece of evidence in the record, nor resemble "a model of analytic precision to survive a challenge." *See Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995); *accord Sokol v. United States*, 120 Fed. Cl. 144, 151 (2015) ("The [Board for Correction of Naval Records] is not required to explain the reasons for its decision 'in great detail.'"). Moreover, Mr. Osburn fails to explain how the evidence would have impacted or changed the BCMR's decision. He does not offer, for example, any material differences between the actual interviews and their summaries; nor does Mr. Osburn explain how any such differences may have altered the Board's findings and ultimate conclusions. Mr. Osburn also fails to explain how the BCMR's reference to contradictory evidence does not account for his proffered evidence supporting a consensual sexual encounter. Further, to the extent the Board lacked access to any critical evidence, the fault lies with Mr. Osburn. *See* 33 C.F.R. § 52.24(a) ("It is the responsibility of the applicant to procure and submit with his or her application such evidence, including official records, as the applicant desires to present in support of his or her case.").

The BCMR similarly did not ignore material evidence or fail to explain their conclusion that the Convening Authority properly referred the charges to a General Court-Martial despite the Preliminary Hearing Officer's recommendations. The Board cited to Rule 405 of the Manual for Courts-Martial (MCM), which considers such reports "advisory." *See* Rule 405(a) (discussion), MCM (2016 ed.) ("Determinations and recommendations of the preliminary hearing officer are advisory.") (ECF 23-1 at 339). In other words, the Convening Authority was not bound by the Preliminary Hearing Officer's recommendations and instead retained authority to dispose of the case at her discretion. Since the alleged victim was under the influence of alcohol, had fallen asleep, and was reportedly unresponsive when Mr. Osburn purportedly carried her to his bedroom, the Board found that referral of charges was supported by the evidence presented. The alleged victim's statements also supported the allegations of sexual assault. Specifically, that she rebuffed Mr. Osburn's initial sexual advances until finally "giving in," that Mr. Osburn deflected her requests to leave, and that Mr. Osburn ignored her repeated objections to an alleged sex act until finally complying with her requests to stop. The BCMR weighed this evidence against the Preliminary Hearing Officer's recommendations and the Discharge Review Board opinion that the sex could have been consensual.

Curiously, the BCMR noted that Mr. Osburn "was not discharged because of the alleged sexual assault, however, but because he made false official statements to the CGIS agents during his interview." AR 21. This is at odds with the CG PCS-

9

EPM Separation Panel Sheet stating: "The 12JUN flag endorsement gets me to where I need to be to concur with *separation with a general for sexual assault*." AR 204 (emphasis added). To the extent the BCMR (and the CG PCS-EPM) erred in mentioning differing bases for separation, it is harmless. Preponderant evidence supported the sexual assault *and* the false official statement allegations, and the notice and chain of command recommendations all relied upon and cited the same facts from the CGIS record in support of Mr. Osburn's administrative separation. Likewise, each alleged offense independently meets the requirements for separation for the commission of a serious offense as both may result in a punitive discharge. Taken together, in relying upon the same facts throughout the separation proceedings, the Coast Guard afforded Mr. Osburn proper notice of the basis of his separation in accordance with COMDTINST M1000.4.

The BCMR addressed other issues related to Mr. Osburn's administrative separation and the characterization of his military service, including the false official statements and his claimed entitlement to retention under the Commandant's Second Chance Program, addressed *infra*. In considering each issue, the Board offered specific record evidence supporting its conclusions. Accordingly, the Court finds no basis in fact or in law to disturb the BCMR's decision.

### III. Involuntary Administrative Separation

Mr. Osburn's amended complaint alleges several procedural irregularities during his administrative separation, ranging from improper notice of the basis for separation to failure to examine the entire record. He also alleges the Coast Guard failed to meet the preponderant evidence standard to administratively separate him for sexual assault and, in doing so, referenced a non-existent Commandant Instruction. After withdrawing and dismissing the charges, presumably due to lack of sufficient evidence, Mr. Osburn argues the Coast Guard improperly tried to "relitigate" the sexual assault allegations under the veil of an administrative separation. ECF 20 at 20. According to Mr. Osburn, this error was exacerbated by the District Commander's characterization of his alleged misconduct as "an assault consummated by a battery in violation of Article 128 of the UCMJ," *see* AR 49, in endorsing his involuntary separation.

Commandant Instruction M1000.4 authorizes Coast Guard Commanders to "direct a discharge for misconduct and the type of discharge (under other than honorable, general, or honorable) as warranted by the particular circumstances of a given case," including the "[c]ommission of a [s]erious [o]ffense." COMDTINST M1000.4 ¶¶ 1.B.17.a, 1.B.17.b.(3) (ECF 23-1 at 141–42).[12] While such separation

---

[12] Since Mr. Osburn's discharge, the Coast Guard has released new editions of COMDTINST M1000.4. In deciding this matter, this Court reviews the rules and protocols in place at the time of the challenged decisions and actions.

10

"does not require adjudication by non-judicial or judicial proceedings . . . the offense must be established by a preponderance of the evidence." *Id.* ¶ 1.B.17.b.(3) (ECF 23-1 at 142). Additionally, "(1) [t]he specific circumstances of the offense [must] warrant separation; and (2) [t]he maximum penalty for the offense or closely related offense . . . [must] include[] a punitive discharge." *Id.* ¶ 1.B.17.b.(3)(a)(1)–(2) (ECF 23-1 at 142). Critical here, "[a]n acquittal or finding of not guilty at a judicial proceeding or not holding [a] non-judicial punishment proceeding does not prohibit proceedings under this provision." *Id.* ¶ 1.B.17.b.(3)(a) (ECF 23-1 at 142).

When a service member, like Mr. Osburn, has less than eight years of military service at the time administrative separation is initiated, they are entitled to the following due process rights:

> (1) *Inform the member in writing of the reason(s) for being considered for discharge* (specifically state one or more of the reasons listed in Article 1.B.17.b. of this Manual supported by known facts).
>
> (2) *Afford the member an opportunity to make a written statement.* If the member does not desire to do so, the commanding officer sets forth that fact in writing over the member's signature. If the member refuses to sign a statement his or her commanding officer will so state in writing.
>
> (3) *Afford the member an opportunity to consult with a lawyer* as defined by Article 27(b)(1), UCMJ, if contemplating a general discharge. If the member requests counsel and one is not available, the commanding officer must delay discharge proceedings until such time as counsel is available.
>
> (4) Send the case containing a recommendation and [various] documents to Commander (CG PSC-EPM-1) for action . . . .

COMDTINST M1000.4 ¶ 1.B.17.e (emphasis added) (ECF 23-1 at 144–45).

In the wake of the alleged victim's decision not to testify and the Convening Authority's dismissal of the charges, Mr. Osburn's Sector Commander initiated administrative separation as documented by the Notification of Intent to Discharge dated April 14, 2017. As referenced *supra*, the notification contained the following information:

> You were accused of sexual assault by a civilian from an incident in July 2015. The following additional information was disclosed during the subsequent CGIS investigation. On 10 July 2015, you provided alcohol to the alleged victim, who at the time was under 21 years old in violation of [state law], which is a violation of Article 134 of the UCMJ.

11

> When interviewed by CGIS, you made several false official statements regarding purchasing alcohol for the alleged victim, picking up and carrying the alleged victim to a bedroom, and [your] involvement in the sexual activity with the alleged victim. These false statements violate Article 107 of the UCMJ, and carry a maximum punishment of a punitive discharge. Your conduct is in direct conflict with the Coast Guard's Core Values.

AR 53. The notice further informed Mr. Osburn that his command would make the ultimate discharge decisions, including the characterization of his service, and informed him of his right to consult a lawyer, ability to submit a statement, and his potential consideration under the Commandant's Second Chance Program. Ten days later, Mr. Osburn acknowledged the notice and objected to the bases for administrative separation, requested retention under the Second Chance Program, and attached a personal statement. His civilian lawyer followed up with a formal response. As such, Mr. Osburn was afforded–and took advantage of–all procedural rights and safeguards established by Commandant Instruction M1000.4 ¶ 1.B.17.e (ECF 23-1 at 144–45).

On May 15 and June 12, 2017, Mr. Osburn's Sector and District Commanders endorsed the basis for his separation and recommended that his service be characterized as General Under Honorable Conditions. These actions were appropriate as false official statements under Article 107 of the UCMJ and sexual assault under Article 120 of the UCMJ both warrant separation. Indeed, as referenced *supra,* service members may be separated based on the commission of a serious military or civilian offense when: (1) "the specific circumstances of the offense warrant separation; and (2) [t]he maximum penalty for the offense or closely related offense under the UCMJ and [MCM] includes a punitive discharge." COMDTINST M1000.4 ¶ 1.B.17.b(3)(a)(1)–(2). Relevant here, each charged offense in this case had a maximum penalty of a punitive discharge. *See* 10 U.S.C. §§ 907 (False Official Statement; False Swearing), 920 (Sexual Assault).

Mr. Osburn takes issue with his District Commander's assertion that "[F]S3 Osburn's act of picking up the victim and carrying her to his bedroom without her consent was an assault consummated by a battery in violation of Article 128 of the UCMJ." AR 49. While this is the first time the Coast Guard expressly referenced Article 128 in any of Mr. Osburn's court-martial or separation proceedings, the facts underlying the challenged statement were included in the April 14, 2017 Notification of Intent to Discharge and well-documented in the CGIS report, including Mr. Osburn's CGIS interview questions. *See* AR 53 ("When interviewed by CGIS, you made several false official statements regarding purchasing alcohol for the alleged victim, *picking up and carrying the alleged victim to a bedroom*, and [your] involvement in the sexual activity with the alleged victim.") (emphasis added). Importantly, when the CG PSC-EPM reviewed and approved Mr. Osburn's

involuntary separation under COMDTINST M1000.4 ¶ 1.B.17.e.(4), the stated basis was "for sexual assault" rather than "for sexual assault consummated by battery." *See* AR 204. Thus, any error committed by the District Commander in referencing Article 128 was harmless. *See Wagner v. United States*, 365 F.3d 1358, 1361 (Fed. Cir. 2004) ("[S]trict compliance with procedural requirements is not required where the error is deemed harmless.") (citations omitted).

Mr. Osburn's citation to several military review board cases decided by this Court and its predecessor, wherein service members received inadequate notice, does not resurrect his claim. In *Clackum v. United States*, for example, the service member had "no knowledge" of the charges pending against her or the supporting evidence until *after* her separation. 296 F.2d 226, 226–27 (Ct. Cl. 1960). Similarly in *Lowry v. United States*, the service member appeared before an Administrative Separation Board following multiple civilian convictions of driving under the influence (DUI) during a prior enlistment period. 153 Fed. Cl. 300, 306, 308 (2021), *vacated-in-part on other grounds on reconsideration*, No. 20-682, 2021 WL 4888874 (Fed. Cl. Oct. 19, 2021). Contrary to the Notice of Intent to Discharge and the hearing before an Administrative Separation Board, the service member was ultimately separated and sanctioned for *failing to report* the civilian DUI convictions to his chain of command during his *current* enlistment period. *Id.* at 310–11, 312, 315. Finally, in *Rogers v. United States*, the service member appeared before an Administrative Separation Board as a result of multiple alcohol-related incidents. 124 Fed. Cl. 757, 761 (2016).[13] After the Administrative Separation Board recommended retention or, alternatively, separation with an Honorable characterization of service, his chain of command presented to the separation authority extra-record evidence and added an additional charge questioning the service member's capacity for leadership. *Id.* at 763, 768–70, 772–74. In contrast to this trilogy of cases, Mr. Osburn's Notification of Intent to Discharge included the ultimate reason and underlying bases for administrative separation (i.e., sexual assault) and his command relied upon the same record throughout the process.[14]

Further, sufficient evidence supports Mr. Osburn's involuntary separation for serious misconduct consistent with Commandant Instruction M1000.4 ¶ 1.B.17.b.(3).

---

[13] Unlike Mr. Osburn, the service members in *Lowry* and *Rogers* had over eight years of military service, thereby entitling them to a hearing before an Administration Separation Board. *See Lowry*, 153 Fed. Cl. at 303; *Rogers*, 124 Fed. Cl. at 770, 771.

[14] Both parties cite *Dillard v. United States*, reiterating: "This Court has held that in order to ensure adequate notice of the content of post-[Administrative Separation Board] hearing memoranda written by commanding officers, the memoranda must be based on information that was contained in the servicemember's military record or the rest of the record before the [Administrative Separation Board]." 165 Fed. Cl. 214, 221 (2023) (citing *Rogers*, 124 Fed. Cl. at 768–70). As detailed throughout this decision, *Dillard* fails Mr. Osburn since all allegations against him were amply documented in the CGIS report, the aborted court-martial, the Notification of Intent to Discharge, and his subsequent administrative separation.

As an initial matter, this instruction expressly allows CGIS reports to serve as the basis for proving a serious offense and, as noted *supra*, even "[a]n acquittal or finding of not guilty at a judicial proceeding or not holding non-judicial punishment proceeding does not prohibit proceedings under this provision." COMDTINST M1000.4 ¶ 1.B.17.b.(3) (ECF 23-1 at 142). In challenging the sufficiency of the evidence, Mr. Osburn relies upon the Preliminary Hearing Officer's report concluding that probable cause did not support criminal charges and the Discharge Review Board's finding that "he[] was processed for discharge *without any evidence* of committing a serious offense nor misconduct." S*ee* AR 131 (emphasis added). These arguments fail. As explained, a Preliminary Hearing Officer's recommendations are *advisory* and not otherwise binding on the Convening Authority. *See* Rule 405(a) (discussion), MCM (ECF 23-1 at 339). Mr. Osburn's reliance upon the Discharge Review Board's above-quoted statement is similarly misplaced. Read in context, the declaration reflects the Discharge Review Board's commentary that the dismissal of the charges precluded Mr. Osburn from cross-examining the alleged victim and tendered witnesses, grounding his involuntary separation in a series of unchallenged accusations. Alternatively, the statement reflects the Discharge Review Board's weighing of the contradictory evidence presented. The record itself undermines any other interpretation. Suffice to say, as detailed throughout this opinion, there is ample evidence supporting the conclusion that Mr. Osburn committed the serious offenses of sexual assault and false official statements by preponderant evidence.

Mr. Osburn's remaining arguments surrounding his involuntary separation notice and processing are similarly unavailing. Asserting the District Commander failed to review the entire record, Mr. Osburn again fails to explain what specific documents were ignored and, more importantly, present a proffer of materiality. Mr. Osburn also points out a clear typographical error in the initial April 14, 2017 Notification of Intent to Discharge, and the May 15, 2017 recommendation of his Sector Commander, where both documents cite non-existent COMDTINST M1000.4 ¶ 1.B.1.b.(1). *See* AR 161, 209. However, each reference is immediately preceded by a citation to the correct Commandant Instruction (i.e., COMDTINST M1000.4 ¶ 1.B.17.b.(3)) followed by a fulsome discussion of the same (i.e., commission of a serious offense). Thus, Mr. Osburn and his civilian counsel received proper notice of the basis for the administrative separation (i.e., commission of a serious offense).[15] Underscoring the frivolousness of this argument, Mr. Osburn further fails to explain how the typographical error prejudiced him in the course of the administrative separation or why neither he nor his lawyer questioned or challenged the references to the non-existent instruction prior to his discharge. Accordingly, this Court finds

---

[15] The reference to the non-existent "(b) Military Separation, COMDTINST M1000.4 [¶] 1.B.1.b.(1)" appears to relate to Mr. Osburn's eligibility for the Commandant's Second Chance Program addressed in Section IV *infra*. *See* AR 159 ("[F]S3 Osburn does meet the eligibility requirements under the Commandant's Second Chance Program *per reference (b)*.") (emphasis added).

14

no basis in law or fact to declare the Coast Guard's administrative separation arbitrary, capricious, unsupported by substantial evidence, or contrary to law.[16]

## IV. Second Chance Program

Mr. Osburn finally argues the Coast Guard failed to consider him for the Commandant's Second Chance Program in lieu of involuntary administrative separation, citing his otherwise impressive military record and desire to continue serving in the Coast Guard. Under the program, Mr. Osburn's District Commander (i.e., First Flag Officer/Senior Executive Service Member within his chain of command) was authorized–*but not required*–"to retain good, solid first-term performers with potential, but who have made a youthful mistake that would otherwise result in their discharge . . . ." COMDTINST M1000.4 ¶¶ 1.B.39.a, 1.B.39.b (ECF 23-1 at 181). In light of the discretionary nature of the Second Chance Program, Mr. Osburn cannot credibly claim entitlement to retention. Nor can this Court compel it. *See Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) ("Judgments made by military officials or administrative bodies that a particular officer does not merit promotion or retention . . . [are] frequently beyond the institutional competence of courts to review . . . and courts will refuse on jurisprudential grounds to review such decisions, even if the court has jurisdiction to do so. Based on this principle, neither the Court of Federal Claims nor [the United States Court of Appeals for the Federal Circuit] will review those specific conclusions of military review boards that speak to the question of whether an officer deserved to be promoted or retained in service.") (citing cases). Put simply, the decision not to retain Mr. Osburn under the Second Chance Program is nonjusticiable.

Furthermore, in reviewing Mr. Osburn's petition, the BCMR offered a litany of reasons why the Second Chance Program was inappropriate. In addition to providing alcohol to a minor and encouraging her to drink, the Board pointed out that Mr. Osburn reportedly made unwelcomed sexual advances toward the alleged victim, picked her up and carried her to his bedroom while she was unresponsive, and thereafter pressured the alleged victim into having sex until she finally "gave in." During the CGIS investigation seven months later, Mr. Osburn reportedly doubled down by making false official statements to investigators. The allegations of serious misconduct–spanning July 2015 to March 2016 while Mr. Osburn was twenty-three

---

[16] Although immaterial to this decision, Mr. Osburn complains the pretrial agreement was better than the ultimate outcome of his administrative separation. However, his situation is no different than any other plea (or contract) negotiation: it was not binding on either party until finalized and executed. Indeed, Mr. Osburn presumably walked away from the bargaining table when he thought a more favorable outcome was on the horizon. While the narrative accompanying his upgraded Honorable characterization of service was ultimately less favorable, it is worth noting that his reenlistment code was later upgraded. The Court similarly rejects Mr. Osburn's narrative that he was prevented from clearing his name as he seemingly relinquished the opportunity. Indeed, when summoned to a Captain's Mast, Mr. Osburn could have demanded a trial by court-martial instead of accepting non-judicial punishment.

years old, and his alleged victim was nineteen years old–cannot be credibly characterized as "a youthful mistake."[17]  COMDTINST M1000.4 ¶ 1.B.39.a (ECF 23-1 at 181).  There is no reason to disturb the findings and conclusions reached by Mr. Osburn's command and the BCMR on this issue.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the administrative record (ECF 20) is **DENIED** and defendant's cross-motion for judgment on the administrative record (ECF 23) is **GRANTED**.  All remaining deadlines included in the Court's scheduling order dated October 27, 2023 (ECF 15), as clarified (ECF 17) and amended (ECF 22, 26), are **VACATED**.  The Clerk of Court is directed to **ENTER** Judgment accordingly.  No costs.

It is so **ORDERED**.

Armando O. Bonilla
Judge

---

[17] Notably, the Commandant Instruction uses the singular "a mistake" rather than the plural "mistakes."  See COMDTINST M1000.4 ¶ 1.B.39.a (ECF 23-1 at 181).

16